United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO PTE LTD,<br><br>　　　　Plaintiff(s),<br><br>　v.<br><br>VALLEY FORGE INSURANCE COMPANY,<br><br>　　　　Defendant(s).<br>_____/ | No. C 09-05641 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Plaintiff APL Co. Pte. Ltd.'s Motion for Summary Judgment** |

　　　　Plaintiff APL Co. Pte. Ltd. ("APL") filed this action against defendant Valley Forge Insurance Company ("Valley Forge"), seeking, as a third-party judgment creditor, to collect on a judgment against Valley Forge's insured, U.G. Co., Inc. ("U.G."), obtained in another action before this court, *APL Co. Pte. Ltd. v. UK Aerosols Ltd. et al.*, No C-05-0646 MHP ("the underlying litigation").  Now before the court is APL's motion for summary judgment, in which it argues that Valley Forge should be judicially estopped from asserting that the incident giving rise to U.G.'s liability in the underlying litigation is not covered by U.G.'s insurance policy with Valley Forge.  Having considered the arguments of the parties and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.     The Underlying Litigation

This dispute arises out of the underlying litigation, which was filed in 2005. In that suit, APL, a shipping company, sued three defendants—UK Aerosols Ltd. ("UK"), U.G. and Kamdar Global, LLC ("Kamdar")—alleging that all three defendants were jointly and severally liable under a bill of lading for costs incurred cleaning up leaked hair care items that were produced and packaged by the defendants. UK defaulted, and a default judgment was entered against UK in May 2006. U.G. and Kamdar, however, continued to defend the suit. In February 2007, the court granted summary judgment in favor of APL. On June 25, 2007, Valley Forge, U.G.'s insurer, moved to intervene for the limited purpose of pursuing an appeal on U.G.'s behalf. On August 2, 2007, the court granted Valley Forge's motion to intervene because U.G., which had its corporate status suspended by the state of California in 2006, was no longer able to legally defend itself in the lawsuit. Meanwhile, on June 26, 2007, this court entered judgment against U.G. and Kamdar and in favor of APL. The parties filed cross appeals of the court's rulings in September 2007. On September 21, 2009, the Ninth Circuit affirmed this court's grant of summary judgment in APL's favor.

II.    Reservation of Rights

The parties dispute whether Valley Forge properly reserved its right to disclaim that U.G.'s insurance policy covered the incident at issue in the underlying litigation. Valley Forge has submitted letters sent to both U.G. and Kamdar in 2005 in which Valley Forge explicitly informed those companies that Valley Forge was providing a defense with a reservation of rights. Docket No. 11 (Donovan Dec.), Exh. C. (November 3, 2005 letter from Valley Forge to U.G. explicitly including a reservation of rights). At the time that Valley Forge moved to intervene in the underlying litigation, it again sent letters to U.G. and Kamdar reserving its right to challenge coverage. *Id.* (2007 letters from Valley Forge to U.G. and Kamdar explicitly including a reservation of rights).

2

Whether Valley forge informed APL that it was defending the action under a reservation of rights is less clear.  The parties agree that by March 11, 2008, at a mediation before the Ninth Circuit, counsel for Valley Forge informed APL that Valley Forge contended that the policy did not cover the judgment in the underlying litigation.  However, nowhere in its motion to intervene or its complaint in intervention did Valley Forge indicate that it reserved the right to challenge coverage. APL asserts that on September 6, 2005, one of its attorneys, Charles Donovan ("Donovan"), spoke to one of Valley Forge's attorneys, Ronald Richman ("Richman"), who was representing U.G. Donovan Dec. ¶ 7.  Donovan asked Richman whether "there would be *Cumis* counsel," referring to the California Court of Appeals decision holding that an insured is entitled to separate counsel from the insurer if the insurer is asserting a reservation of rights.  *Id.*; *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal. App. 3d 358 (1984).  According to Donovan's declaration, Richman responded that "there would be no *Cumis* counsel because CNA [Valley Forge's parent company] had accepted the defense of the case without a reservation form rights."  Donovan Dec. ¶ 7.  APL contends that it was not aware of any reservation of rights until March 11, 2008, after the filing of the motion to intervene and the notice of appeal, when one of Valley Forge's attorneys, Marilyn Raia ("Raia"), informed APL that she had just learned of Valley Forge's reservation of rights.  *Id.* ¶ 9.

Valley Forge has submitted declarations contradicting Donovan's characterization of events. Richman's declaration states that he never said to Donovan that "Valley Forge had accepted the defense of the Underlying Action without reservation of rights."  Docket No. 20 (Richman Dec.) ¶ 6. He further states that he "never represented to Mr. Donovan or APL that . . . Valley Forge is defending U.G.Co. [sic] or Kamdar in the Underlying Action without a reservation of rights." *Id.*; *see id.* ("In fact, I did not make that statement to Mr. Donovan.").  Similarly, in her declaration Raia states that she did not say to Donovan on March 11, 2008 that she had just learned of the reservation of rights.  Raia Dec. ¶ 6 ("In fact, I did not make that statement to Mr. Donovan.  I had learned that Valley Forge had reserved its rights to deny coverage in 2005.").

III.     Subsequent Litigation

3

On November 19, 2009, Valley Forge filed an action against APL, U.G. and Kamdar in the Superior Court for the County of Los Angeles (the "Southern California action"), seeking a declaratory judgment that U.G.'s insurance policy does not cover the conduct at issue in the underlying litigation and that Valley Forge is not liable to APL for the judgment in the underlying litigation. On December 1, 2009, APL filed the instant action in this court against Valley Forge, seeking to recover, pursuant to California Insurance Code section 11580, the amount of the judgment in the underlying litigation.

On December 21, 2009, APL removed the Southern California action to the United States District Court for the Central District of California, alleging the existence of diversity jurisdiction and admiralty and maritime jurisdiction. In response, Valley Forge filed a motion for remand, contending that no grounds exist for jurisdiction in federal court. APL also filed a motion to transfer the Southern California action to this court. On March 16, 2010, one day after this court conducted a hearing on the instant motion for summary judgment, Judge Morrow in the Central District granted Valley Forge's motion to remand. *Valley Forge Ins. Co. v. APL Co. Pte. Ltd.*, C 09-9323-MMM-VBK, Docket No. 22 (Civil Minutes) (C.D. Cal. March 16, 2010).

LEGAL STANDARD

I.     Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

4

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *Id.*; *see also Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir.1994). The court may not make credibility determinations and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 249; *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991)

II.     <u>Judicial Estoppel</u>.

The doctrine of judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Morris v. California*, 966 F.2d 448, 452-53 (9th Cir. 1991), *cert. denied*, 506 U.S. 831 (1992) (citations omitted). Typically, judicial estoppel is invoked to prevent a party from taking inconsistent positions in the same litigation. *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993); *see also Pegram v. Herdich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."). However, judicial estoppel may be invoked to prevent a party from taking inconsistent positions in two different lawsuits. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778 (9th Cir. 2009) ("Judicial estoppel not only bars inconsistent positions taken in the same litigation, but 'bar[s] litigants from making incompatible statements in two different cases.' ") (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001)). The aim of the doctrine is to protect the integrity of the courts by preventing a litigant from "playing fast and loose with the courts by taking inconsistent positions." *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988) (internal quotation marks and citations omitted).

Courts which have recognized the doctrine of judicial estoppel have followed two distinct approaches. The majority of circuits have held that a litigant will be judicially estopped from asserting a contrary position only where "the inconsistent statement was actually adopted by the

5

1 court in the earlier litigation." *Yanez*, 989 F.2d at 326.  Under the minority approach, "the doctrine
2 applies even if the litigant was unsuccessful in asserting the inconsistent position." *Id.*

DISCUSSION

APL presents two arguments for why this court should prevent Valley Forge from now asserting that U.G.'s insurance policy did not cover the incidents giving rise to judgment in the underlying litigation.  First, APL contends that Valley Forge, in its motion to intervene, represented to this court that it was not reserving its right to challenge coverage, and thus should be judicially estopped from now denying coverage.  Second, APL suggests that Valley Forge was required pursuant to Federal Rule of Civil Procedure 13(a) to raise its denial of coverage as a compulsory counterclaim in its complaint in intervention, and that its failure to do so precludes it from raising such a defense in the instant litigation.  The court addresses each argument in turn.

I.  Judicial Estoppel

APL asserts that in Valley Forge's motion to intervene in the underlying litigation, Valley Forge represented that it was not challenging whether the claims of its insured, U.G., were covered by U.G.'s insurance policy.  APL reasons that Valley Forge should be bound by that representation in this litigation regarding the scope of the insurance policy.

In so arguing, APL overlooks a crucial fact: Even if Valley Forge, in its motion to intervene, made a representation to the court regarding a reservation of rights (and it is not clear that it did), this court, in resolving the motion to intervene, never "adopted" or relied upon Valley Forge's position regarding whether U.G.'s insurance policy covered the disputed damages.   In the order granting the motion to intervene, the court did not mention whether or not Valley Forge asserted a reservation of rights.  More to the point, California law, upon which the court relied in resolving Valley Forge's motion to intervene, dictates that an insurance company is entitled to intervene on behalf of its insured, a suspended corporation, whether or not the insurer intends to reserve its right to assert coverage defenses. Ordinarily, "[a]n insurer which refuse[s] to defend [its insured] except upon a reservation of rights has only a consequential interest not justifying intervention in an action

6

against the insured." *Hinton v. Beck*, 176 Cal. App. 4th 1378, 1383-84 (2009). In *Hinton*, the California Court of Appeals reached its conclusion even though pursuant to California Insurance Code section 11580(b)(2), "a judgment creditor who has prevailed in a lawsuit against an insured party may bring a direct action against the insurer subject to the terms and limitations of the policy." *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 136 Cal. App. 4th 212, 223 (2006) (summarizing California Insurance Code section 11580(b)(2)).[1] The *Hinton* court concluded, as have many others, that an insurer's interest in a subsequent action by a third-party judgment creditor to collect against an insurance company is insufficient to justify intervention in a lawsuit.

A different rule applies, however, when the insured is unable to defend itself in the litigation. As this court previously recognized, California Revenue and Tax Code section 19719 prevents a suspended corporation from exercising its right to sue or defend a lawsuit. Cal. Rev. & Tax § 19719. The California Court of Appeals has held that because of a suspended corporation's inability to defend itself in a lawsuit, the insurer of a suspended corporation may intervene in a lawsuit filed against the suspended corporation *even under a reservation of rights*. *See Kaufman & Broad.*, 136 Cal. App. 4th at 223. This principle emanates from the interplay between section 19719 and section 11580. For if an insurer were unable to intervene on behalf of a legally incapacitated insured without simultaneously being able to assert a reservation of rights, the insurer would be deprived of any opportunity to "contest its insured's fault or the available damages." *Id.* at 222 (citing *Reliance Ins. Co. v. Superior Court*, 84 Cal. App. 4th 383, 387 (2000)).

*Kaufman & Broad* outlines a process by which an insurer intervening on behalf of a suspended corporation should provide notice to a plaintiff of its intent to reserve its rights. *See id.* ("[W]here the insured is unable to assert its rights, an insurer who seeks to intervene and protect its coverage defenses may provide an explicit reservation of rights to its client and allege that reservation of rights within its pleading to put the plaintiff on notice that the insurance company is reserving those rights and asserting coverage defenses."). But nowhere does *Kaufman & Broad* indicate that an insurer's decision to concede or challenge coverage should factor into a court's resolution of an insurer's motion to intervene. *Kaufman & Broad* simply stands for the proposition

7

that under California law, it is error for a court to deny an insurance company's motion to intervene where the insured is incapable of defending itself. Thus, contrary to APL's suggestion, had Valley Forge more clearly indicated that it was intervening but reserving its right to deny coverage to U.G., the court still would have granted the motion to intervene. Accordingly, because the reservation-of-rights issue was entirely irrelevant to the motion to intervene in the instant case, the court never "adopted" Valley Forge's position. Therefore, Valley Forge cannot be judicially estopped from challenging coverage in this action under California Insurance Code section 11580.[2]

In its reply brief, APL raises, for the first time, an argument that Valley Forge waived its ability to challenge coverage by not complying with the reservation-of-rights procedures detailed in *Kaufman & Broad*. As it appears that Valley Forge did not, in fact, "allege [a] reservation of rights within its pleading to put the plaintiff on notice that the insurance company is reserving those rights and asserting coverage defenses," APL's waiver argument may possess some merit. However, a "district court need not consider arguments raised for the first time in a reply brief," *Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003), and this court elects not to do so here.

II.     Compulsory Counterclaim

Federal Rule of Civil Procedure 13(a) relevantly defines a compulsory counterclaim as "any claim—that at the time of service—the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed R. Civ. P. 13(a)(1)(A). APL asserts that Valley Forge should be prohibited from now denying coverage because it was required to assert the denial of coverage as a compulsory counterclaim in its complaint in intervention. For a number of reasons, APL's argument is unpersuasive.

To begin with, the scope of U.G.'s insurance policy with Valley Forge does not "arise[] out of the same transaction or occurrence" as the underlying litigation regarding U.G.'s liability to APL; although the facts underlying APL's claim against U.G. will undoubtedly be relevant in any action APL might bring against Valley Forge to enforce the judgment, it is a separate and distinct matter.

8

Next, any counterclaim, which presumably would have been brought under section 11580, was not ripe at the time that Valley Forge filed its motion to intervene and complaint in intervention. An action by a third-party judgment creditor against an insurance company is not available to the third-party until a "judgment is secured against the insured . . . ." Cal. Ins. Code § 11580(b)(2). Valley Forge filed its motion to intervene and accompanying complaint in intervention on June 25, 2007. This court did not enter judgment in the underlying action until one day later, June 26, 2007. Therefore, no action was available to APL until after Valley Forge moved to intervene.

Along those same lines, it is not clear that a declaratory judgment claim under section 11580(b)(2) brought by an insurer could ever be a compulsory counterclaim in litigation focused on the liability of the insured. Section 11580 provides a third-party judgment claimant with the opportunity to file suit against an insurer. Section 11580(b)(2) does not, however, require a third-party to file suit against an insurance company. Therefore, an insurer cannot be certain that it will become embroiled in litigation regarding the scope of an insurance policy until it is, in fact, sued by the third party. Put differently, unless a judgment has issued in an underlying action and the third party has already filed suit to enforce that judgment against the insurance company, the insurance company cannot know "at the time of service" of its complaint that it has any claims against the third party.

Finally, as Valley Forge spells out in its brief, California law precludes an insurance company intervening on behalf of its insured from litigating coverage issues until after the completion of the underlying action, in order to avoid prejudice to the insured. *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 301 (1993). To require an intervening insurance company to plead a coverage counterclaim would violate this clear California policy.

Given all of these considerations, at the time that Valley Forge intervened in the underlying litigation, any claim that Valley Forge may have had against APL disclaiming coverage was either not yet ripe or, at best, a permissive counterclaim. Accordingly, the court holds that Valley Forge was not required to include a compulsory counterclaim in its complaint in intervention regarding the

9

scope of the insurance policy. Valley Forge therefore did not waive its ability to raise coverage defenses in a later action.

CONCLUSION

For the aforementioned reasons, plaintiff APL's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: April 2, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

**ENDNOTES**

1.      California Insurance Code section 11580(b)(2) provides that every insurance policy in California must include or will be interpreted to include the following language: "[W]henever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins. Code § 11580(b)(2).

2.      The cases cited by APL do not compel a contrary result because they all involve insurance companies seeking to intervene on behalf of insureds who were legally capable of defending themselves in court. The critical distinction in the instant case is that, by means of the suspension of its corporate status, U.G. could not legally defend itself on appeal against APL's claims.

Further, APL's contention that Valley Forge conceded coverage by referring to U.G. as its "insured" in its motion to intervene is preposterous. It is common legal parlance to refer to an insurance company as the "insurer" and the entity holding an insurance policy as the "insured." The terms have no bearing, whatsoever, on whether a particular claim falls within the terms of that policy, but serve only as shorthand references to the parties' relationship to each other..